IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LLOYD'S SYNDICATE TRAVELERS 5000 <br><br> Plaintiffs, <br><br> v. <br><br> TRANSJET CARGO, LLC, and DISKA, LLC <br><br> Defendants. | CASE NO. 1:25-cv-01502 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Lloyd's Syndicate Travelers 5000 ("Plaintiff" or "Travelers"), by counsel, under 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure, for its Complaint for Declaratory Judgment, states:

### INTRODUCTION AND THE PARTIES

1. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 to determine the rights and duties of the parties under an insurance policy with respect to claims arising out of an alleged cargo loss.

2. Plaintiff is an unincorporated association of underwriters at Lloyd's Syndicate Travelers 5000, the managing agent of which is Travelers Syndicate Management Limited ("TSM") and the corporate members of which are Aprilgrange Limited ("Aprilgrange") and F&G UK Underwriters Limited ("F&G"). TSM, Aprilgrange and F&G are all UK incorporated companies that have their principal places of business in the UK and that are wholly owned by The Travelers Companies, Inc., which is a U.S. company incorporated in Minnesota and listed on the New York Stock Exchange. Plaintiff's principal place of business is in London, England.

3. Defendant Transjet Cargo, LLC ("Transjet") is a limited liability company organized and existing under the laws of the State of Indiana with its principal place of business in Indianapolis, Indiana. Its sole member, Manjit Singh Nagra, is a citizen of

Indiana. Transjet can be served with process through its registered agent, Manjit Singh Nagra, 325 South College Avenue, Indianapolis, Indiana 46202.

4. Defendant Diska, LLC ("Diska") is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business in Leander, Texas. Diska's sole member, Ashish Bharal, is a natural person and citizen of Texas. Diska can be served with process through its registered agent, Diva Bharal, 2509 Livenza Place, Leander, Texas 78641.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a)(2) because Plaintiff is a citizen of a foreign state, and Defendants are citizens of different U.S. states, and the amount in controversy, including the costs of defending and indemnifying Defendant Transjet in the lawsuit that underlies this matter as set forth below, exceeds the sum of $75,000.00, exclusive of interest and costs.

6. Venue is proper in this Court under 28 U.S.C. § 1391 because the underlying lawsuit is pending in this District, and Defendant Transjet's primary place of business is in this District.

## FACTUAL BACKGROUND

**A. The Diska Lawsuit**

7. Diska filed suit against Transjet captioned *Diska, LLC v. Transjet Cargo, LLC*, Civil Action File No. l:25-cv-000307, in the United States District Court, Southern District of Indiana, Indianapolis Division (hereinafter, the "Underlying Lawsuit"). A copy of the Complaint filed by Diska in the Underlying Lawsuit is attached as **Exhibit 1**.

8. According to the Complaint in the Underlying Lawsuit,[1] Diska and Transjet entered into a Broker/Shipper Transportation Agreement (the "Contract") under which

---

[1] Plaintiff's recitation of allegations is not an admission of any fact and does not represent Plaintiff's understanding that any such facts have been or may be proven.

Page 2 of 14

Transjet agreed to arrange transportation of certain freight (the "Freight") owned by Diska in exchange for payment. Ex. 1, ¶ 6.

9. The Complaint asserts that, at the time the shipment was tendered to Transjet, Diska informed Transjet that the value of the cargo was in excess of $600,000. Ex. 1, ¶ 7.

10. The Complaint alleges that Transjet hired an entity purporting to be ABM Transport LLC (the "Purported Carrier") to transport the Freight. Ex. 1, ¶ 11.

11. The Complaint further alleges that the Purported Carrier disappeared with the Freight and never delivered it. Ex. 1, ¶ 12.

12. The Complaint claims that Transjet warranted that it would include certain terms in each written contract with any and all carriers that it engaged to perform the transportation services required by the Contract, including that the carrier maintain all insurance requirements required to perform the services. Ex. 1, ¶ 10.

13. The Complaint also claims that Transjet agreed to verify that each carrier it utilizes in the performance of the Contract has insurance policies with a minimum amount of insurance. Ex. 1, ¶ 10.

14. The Complaint contends that Transjet failed to conduct due diligence on the qualifications of the Purported Carrier to provide motor carrier services in connection with the shipment of the Freight. Ex. 1, ¶ 16.

15. The Complaint alleges that Transjet breached its contractual duty to provide adequate and proper freight brokerage services to Diska with respect to shipment of the Freight by failing, among other things, to hire a "motor carrier"—as that term is defined under 49 U.S.C. § 13102(14) and 49 C.F.R. § 390.5—pursuant to the Contract. Ex. 1, ¶¶ 32-33, 36.

16. The Complaint asserts that Transjet breached its contractual duty by failing to investigate whether the Purported Carrier was qualified, experienced, reputable, and reliable in transporting the Freight. Ex. 1, ¶ 35.

17. In addition to pre-judgment and post-judgment interest, the Complaint demands judgment against Transjet for actual damages in an amount in excess of $600,000.00. Ex. 1, ¶ 37.

### B. Police Report

18. The Mequon Police Department in Wisconsin completed an Incident Report regarding the subject cargo theft. A copy of the Incident Report is attached as **Exhibit 2**.

19. The Incident Report provides that the subject cargo consisted of 11,708 units of ProsperG11 64BG 4RAM Tablets at $32 apiece for the total amount of $374,656. Ex. 2, p. 7.

### C. Reservation of Rights

20. Travelers hired counsel to defend Transjet in the Underlying Lawsuit under its freight broker liability policy subject to a full reservation of its rights. A copy of Travelers' reservation of rights letter is attached as **Exhibit 3**.

21. Transjet objected to Travelers' reservation of rights letter. A copy of Transjet's objection is attached as **Exhibit 4**.

### D. Co-brokerage Agreement

22. Transjet entered into a Co-Brokerage Agreement with Onstar Freight, Inc. ("Onstar"), whereunder Transjet agreed to provide co-brokerage services to Onstar in connection with the transportation of freight. A copy of the Co-Brokerage Agreement is attached as **Exhibit 5**.

### E. The Freight Broker Liability Policy

23. Travelers subscribed to policy no. B1647MB235276-427 to Transjet providing freight broker liability coverage for the policy period of November 22, 2023

through November 22, 2024 (the "Policy"). A certified copy of the Policy (with premium amounts redacted) is attached as **Exhibit 6**.

24. The Policy provides the following types of coverages to which a premium applies.

25. Transjet purchased the following coverages: (1) Section A: Freight Broker Professional Indemnity (Defense) with a limit of liability of $100,000 ("Section A"); (2) Section B: Freight Broker Cargo Legal Liability (Defense) with a limit of liability of $250,000 ("Section B"); (3) Section C: Freight Broker Auto / Third Party Liability (Defense) with a limit of liability of $1,000,000 ("Section C"); and (4) Section D: Freight Broker Commercial General Liability (Defenses) with a limit of liability of $1,000,000 ("Section D"). The foregoing limits of liability are for any one accident or occurrence and inclusive of costs, fees and expenses either approved and/or incurred by Travelers. Ex. 6, pp. 3-4.

26. Transjet did not purchase Section E: Freight Broker Contingent Cargo (Broad Form) ("Section E") coverage. Ex. 6, pp. 3-4.

27. There is a $5,000 Deductible for any one accident or occurrence under the Policy. Ex. 6, p. 4.

28. In pertinent part, the Policy contains the condition precedent:

> **Condition Precedent:**
>
> **It is a condition precedent to the liability of Insurers hereon that the Insured has in place a signed Broker/Carrier Agreement with all parties with whom they contract common carrier/contract carrier services, and furthermore that such Broker/Carrier Agreement incorporates any amendments as required by Insurers.**

Ex. 6, p. 5.

29. The Insured is defined in the Policy as Transjet. Ex. 6, p. 9.

30. Transjet did not have a signed Broker/Carrier Agreement in place with the Purported Carrier and/or the carrier who transported the Freight.

31. The General Conditions provision of the General Terms, Conditions, Exclusions and Definitions section of the Policy, provides in part as follows:

### GENERAL CONDITIONS

* * * *

**18. Sub-brokerage Operation(s)**

Where you contract the services of a Third Party Freight Broker (Sub-broker) to perform services on your behalf, the following Condition Precedent contained in the Schedule to this Policy is deleted:

*"It is a condition precedent to the liability of Insurers hereon that the Insured has in place a signed Broker / Carrier Agreement with all parties with whom they contract common carrier / contract carrier services in a format on file and approved by Insurers hereon".*

and replaced with;

*"It is a condition precedent to the liability of Insurers hereon that the Insured has in place a signed Sub-brokerage Agreement with any Third Party Freight Broker (Sub-broker) performing Freight Broker services on their behalf in a format on file and approved by Insurers hereon".*

Ex. 6, p. 70.

32. Transjet did not have in place a signed Sub-brokerage Agreement with a third party freight broker that was in a format on file and approved by Travelers.

33. As to the duty to defend, Section A of the Policy provides the following language:

**A.10 Duty to Defend**

Insurers shall have the right and duty to defend you against any legal action and/or suit covered by this policy even if such legal action and/or suit is groundless, false or fraudulent. However, Insurers do not have the duty to defend you against a legal action seeking damages for liability to which this policy does not apply.

Insurers will investigate and settle any suit as considered appropriate.

> Insurers' duty to defend or settle any claim ends when the policy limit of liability has been exhausted.
>
> * * * *

Ex. 6, p. 24.

34. Section A of the Policy contains the following cargo exclusion:

### SECTION A – EXCLUSIONS

**THIS SECTION *DOES NOT* PAY ON BEHALF OF THE INSURED FOR:**

**1.   Bodily Injury and Property Damage**

> Liability, costs or expenses for bodily injury, sickness, disease sustained by a person, including death OR for destruction of or loss of or damage to property belonging to a third party, including cargo.
>
> * * * *

Ex. 6, p. 24.

35. Regarding the duty to defend, Section B of the Policy provides as follows:

**B.12 Duty to Defend**

> Insurers shall have the right and duty to defend you against any legal action and/or suit covered by this policy even if such legal action and/or suit is groundless, false or fraudulent. However, Insurers do not have the duty to defend you against a legal action seeking damages for liability to which this policy does not apply.
>
> Insurers will investigate and settle any suit as considered appropriate.
>
> Insurers' duty to defend or settle any claim ends when the policy limit of liability has been exhausted.
>
> * * * *

36. Section B of the Policy contains the following exclusion:

### SECTION B – EXCLUSIONS

* * * *

**6.   High Risk Cargoes:**
Liability, costs or expenses in respect of:

* * * *

    **6.3.**    Laptop computers, tablet computers, personal computers, computer chips, memory modules, expansion cards, software licences and the like;

    **6.4.**    Domestic electronic equipment including but not limited to television screens, plasma screens, LED screens, audio / audio visual equipment and the like;

* * * *

*unless you have prior written approval from the Insurer.*

Ex. 6, p. 29 (emphasis in original).

    37.    Section C coverage provides, in part, that Travelers agrees to pay on behalf of Transjet "[a]ll sums which [Transjet] shall become legally obligated to pay as damages because of property damage but excluding cargo[.]" Ex. 6, p. 32.

    38.    Section C coverage is also subject to the following exclusions:

### SECTION C – EXCLUSIONS

### THIS SECTION *DOES NOT* PAY ON BEHALF OF THE INSURED FOR:

* * * *

    **2.**    Liability, costs and expenses assumed under any contract or agreement whether verbal, written or otherwise, however this exclusion not to apply where the liability of the Insured would have been attached in the absence of such contract or agreement.

* * * *

    **7.**    Liability, costs and expenses for loss of or damage to cargo carried in or upon the Automotive equipment owned and/or operated by the common carriers and/or contract carriers with whom the Insured has contracted to carry such cargo and/or merchandise.

* * * *

Ex. 6, pp. 34-35.

    39.    Section D provides the following cargo exclusion:

### SECTION D – ADDITIONAL EXCLUSION

> This Section D excludes any and all liability that is caused by an occurrence and arises out of the transportation of cargo and/or merchandise in or upon automotive equipment, including operations under dispatch and in the course of transit and whilst in transit to/from and whilst loading/unloading at place of collection/delivery.

Ex. 6, p. 58.

40. In addition, the Policy provides the following General Conditions, which provide in part as follows:

## GENERAL CONDITIONS

\* \* \* \*

**4. Due Diligence**

> It is a condition precedent to liability under this policy that you have, prior to any event or occurrence giving rise to a potential claim under its terms, taken reasonable steps to implement sound management systems and controls in respect of:
>
> \* \* \* \*
>
> **4.1.** Recruitment of [...] staff suitable and qualified for the role or roles they are required to fulfil,
>
> **4.2.** Training of [...] staff for the role or roles that they were required to fulfil,
>
> **4.3.** Management and supervision of your [...] staff and of any subcontractor(s) or agent(s),
>
> \* \* \* \*
>
> **4.5.** Risk management in respect of the provision of the services set out in the Schedule to this Policy,
>
> \* \* \* \*

Ex. 6, pp. 67.

## COUNT I – DECLARATORY JUDGMENT ON DUTY TO DEFEND

41. Plaintiff incorporates by reference and restates the allegations in paragraphs 1 through 40.

42. An actual controversy has arisen between Plaintiff and Defendants, and there exists a bona fide, actual, present, and practical need for a declaration regarding Plaintiff's duty to defend Defendant Transjet in the Underlying Lawsuit.

43. As a condition precedent t o the liability of Travelers under the Policy ("Condition Precedent"), Transjet is required to have "in place a signed Broker/Carrier Agreement with all parties with whom they contract common carrier/contract carrier services, and furthermore that such Broker/Carrier agreement incorporates any amendments as required by [Travelers]."

44. Because Transjet did not have a signed Broker/Carrier Agreement in place with the Purported Carrier and/or the carrier who transported the Freight, Transjet failed to comply with the Condition Precedent of the Policy, and coverage is not available under the Policy.

45. To the extent that Transjet contracted the services of a sub-broker to perform services on its behalf, the General Conditions of the Policy require, as a condition precedent to the liability of Travelers thereunder, that Transjet have "in place a signed Sub-brokerage Agreement" with a sub-broker performing freight services on Transjet's behalf "in a format on file and approved by [Travelers]" (hereinafter, the "Sub-brokerage Operation(s) Condition").

46. Because the Co-Brokerage Agreement between Transjet and Onstar details Transjet's performance of freight services on behalf of Onstar, and because the Co-Brokerage Agreement is not "in a format on file and approved by" Travelers, it does not comply with the Sub-brokerage Operation(s) Condition of the Policy, and coverage is not available under the Policy.

47. Section A of the Policy excludes coverage for Transjet's liability, costs or expenses for destruction of, loss of, or damage to property, including cargo, belonging to a third party, *i.e.*, Diska's cargo claim ("Section A's Cargo Exclusion").

48. Because the Complaint seeks to recover the value of the cargo that the Purported Carrier disappeared with and never delivered, Section A's Cargo Exclusion is triggered, and Plaintiff has no duty to defend Transjet under Section A of the Policy.

49. Section B of the Policy excludes coverage for liability, costs or expenses with respect to "[l]aptop computers, tablet computers, personal computers, computer chips, memory modules, expansion cards, software licenses and the like;" as well as "[d]omestic electronic equipment including but not limited to television screens, plasma screens, LED screens, audio / audio visual equipment and the like" unless Transjet has prior written approval from Travelers ("Section B's High Risk Cargoes Exclusion").

50. Because the subject cargo consisted of ProsperG11 64BG 4RAM Tablets, and Transjet did not have prior written approval from Travelers, Section B's High Risk Cargoes Exclusion is triggered, and Plaintiff has no duty to defend Transjet under Section B of the Policy.

51. Coverage under Section C of the Policy specifically "exclud[es] cargo" as well as Transjet's liability, costs and expenses for loss of or damage to cargo carried in or upon the Automotive equipment owned and/or operated by the common carriers and/or contract carriers with whom Transjet has contracted to carry such cargo and/or merchandise (*i.e.*, the Purported Carrier).

52. Pursuant to the foregoing language, coverage is barred under Section C for Diska's cargo claim against Transjet, and Plaintiff has no duty to defend Transjet under Section C of the Policy.

53. Section C also excludes liability, costs and expenses assumed under any contract or agreement, but this exclusion does not to apply where the liability of Transjet would have been attached in the absence of such contract or agreement ("Section C's Contractual Liability Exclusion").

54. Because the Complaint alleges that Transjet breached its contractual duty to provide adequate and proper freight brokerage services to Diska with respect to the shipment of the Freight pursuant to the Contract, Transjet's contractual liability would not have attached absent the Contract; therefore, Section C's Contractual Liability Exclusion applies, and Plaintiff has no duty to defend Transjet under Section C of the Policy.

55. Section D of the Policy "excludes any and all liability that is caused by an occurrence and arises out of the transportation of cargo and/or merchandise in or upon automotive equipment, including operations under dispatch and in the course of transit and whilst in transit to/from and whilst loading/unloading at place of collection/delivery" ("Section D's Additional Exclusion").

56. Diska's cargo claim against Transjet in the Complaint triggers Section D's Additional Exclusion and precludes coverage under Section D; therefore, Plaintiff has no duty to defend Transjet under Section D of the Policy.

57. Pursuant to the General Conditions of the Policy, it is a condition precedent to liability under the Policy that, prior to an event giving rise to a claim, Transjet has "taken reasonable steps to implement sound management systems and controls" with respect to recruitment, training, management and supervision of staff for the role or roles they are required to fulfill (the "Due Diligence Condition").

58. Because the Complaint alleges that Transjet failed to investigate whether the Purported Carrier was qualified, experienced, reputable, and reliable in transporting the Freight, and that Transjet failed to conduct due diligence on the qualifications of the Purported Carrier to provide motor carrier services in connection with the shipment of the Freight, the Due Diligence Condition of the Policy is not met and coverage under the Policy does not apply.

59. Based on the foregoing facts and the Policy language, Diska's claims are not covered under the Policy, and thus Travelers owes no duty to defend Transjet.

## COUNT II – DECLARATORY JUDGMENT ON DUTY TO INDEMNIFY

60. Plaintiff incorporates by reference and restates the allegations in paragraphs 1 through 59.

61. An actual controversy has arisen between Plaintiff and Defendants, and there exists a bona fide, actual, present, and practical need for a declaration regarding Plaintiff's duty to indemnify Defendant Transjet in the Underlying Lawsuit.

62. For the same reasons outlined above, Plaintiff has no duty to indemnify Transjet in the Underlying Lawsuit.

63. For the foregoing reasons, Plaintiff has no duty to pay any judgment Defendant Diska, as the plaintiff in the Underlying Lawsuit, may obtain against Defendant Transjet in the Underlying Lawsuit.

## CLAIM FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a declaratory judgment for Plaintiff and against Defendants declaring that:

(a) The Policy provides no coverage for the Underlying Lawsuit;

(b) Plaintiff has no duty under the Policy to provide Transjet with a defense in the Underlying Lawsuit;

(c) Plaintiff has no duty under the Policy to indemnify Transjet for expenses, settlements, judgments, or costs related to the Underlying Lawsuit or the subject cargo theft; and

(d) Plaintiff is entitled to the costs of this action and all other relief that this Court finds just and proper.

```
```
Going:

        LEWIS WAGNER & TRIMBLE

        /s/ Michael R. Giordano
        MICHAEL R. GIORDANO, #31317-53
        EDMUND L. ABEL, #36293-49
        *Attorneys for Plaintiff, Lloyd's Syndicate Travelers 500*

LEWIS WAGNER & TRIMBLE
1411 Roosevelt Avenue, Suite 102
Indianapolis, Indiana 46201
Phone: (317) 237-0500
mgiordano@lewiswagner.com
eabel@lewiswagner.com